UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

*Plaintiff,*

**NOTICE OF MOTION**
Indictment No: 21-cr-00167(JLS)(JJM)

JOSE OLIVERO, JR.

*Defendants.*

---

S I R S :

COMES NOW the defendant, JOSE OLIVERO, by and through her attorneys, LIPSITZ, OLIVERO, SCIME CAMBRIA LLP, HERBERT L. GREENMAN, ESQ., attorneys for Jose Olivero and upon the annexed affidavit of Herbert L. Greenman, hereby moves this Court for the relief set forth in the affidavit annexed hereto and made a part hereof together with such other and further relief as to this court deems just and proper.

DATED: Buffalo, New York
         March 5, 2024

Respectfully submitted,

/s/Herbert L. Greenman

---

HERBERT L. GREENMAN, ESQ.
Counsel for Defendant
JOSE OLIVERO
Office and Post Office Address
42 Delaware Avenue
Buffalo, New York 14202
(716) 489-1333
hGreenman@lglaw.com

TO:     LOUIS TESTANI, ESQ.
        ASSISTANT UNITED STATES ATTORNEY
        138 Delaware Avenue
        Buffalo, New York 14202

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

       **DEFENDANT JOSE OLIVERO'S**
       **PRE-TRIAL MOTIONS**

      v.
       **Indictment No:  21-cr-00167(JLS)(JJM)**

JOSE OLIVERO,

      Defendants.

_____

    HERBERT L. GREENMAN, ESQ., being duly sworn, deposes and says:

    1.        I am an attorney at law duly licensed to practice in the State of New York; I am of counsel with the law firm of Lipsitz, Olivero, Scime & Cambria LLP; and I represent the defendant, Jose Olivero herein.

    2.        Defendant Jose Olivero files the instant motion for various relief.

    3.        As background, Mr. Olivero is charged in counts 1, 2, 5,6 and 8 of a 20 count indictment. The indictment includes 13 co-defendants.

    4.        The first count charges Mr. Olivero together with co-defendants with Narcotics Conspiracy for conduct beginning or before 2018 until the time of the indictment with Possessing with the Intent to Distribute and to Distribute Heroin, Cocaine, and Fentanyl.

    5.        The second count charges Mr. Olivero with Possession with Intent to Distribute and Distribution of Cocaine on or about December 13, 2019 together with co-defendant Valdes-Sanchez in violation of Title 21 USC §841(a)(1) and 841(b)(1)(C).

6.        Count 5 charges Mr. Olivero with Possession with Intent to Distribute Cocaine for conduct occurring on or about June 30, 2020 in violation of Title 21 USC §841(a)(1) and 841(b)(1)(A).

7.        Count 6 charges Mr. Olivero with Attempt to Possess with Intent to Distribute Cocaine for conduct occurring in or around July 11, 2020 with Knowingly and Unlawfully Possessing with the Intent to Distribute 5 kg or more of Cocaine in violation of Title 21 USC §846 and Title 18 USC §2.

8.        Count 8 charges Mr. Olivero with Possession with Intent to Distribute and Distribution of Cocaine for conduct occurring on or about August 28, 2020 together with co-defendant Valdes-Sanchez in violation of Title 21 USC §841(a)(1) and 841(b)(1)(C).

9.        The defendant has pled not guilty.

# I

## MOTION TO SUPPRESS STATEMENTS

10.        Voluntary discovery has not revealed that statements attributed to Mr. Olivero were obtained by law enforcement personnel effectuating his arrest.

11.        Your deponent asks this Court to conduct a hearing to determine the propriety of the taking of any statements. In the first place, we cannot indicate with any degree of specificity whether the search of the premises was actually based upon probable cause to believe that a crime had occurred therein.

12.        Your deponent asks that this Court order the prosecutor to provide further information with respect to the circumstances at the scene and, under what circumstances defendant Jose Olivero was questioned by any agents.  Your deponent reserves his right to

amplify this motion to suppress any statements.

13.        As will be set forth below, counsel is hereby demanding that pursuant to Rule 12 of the Federal Rules of Criminal Procedure Rule 12 (b)(4)(B) and pursuant to Rule 12(b)(3)(C) that the government provide notice of its evidence and case in chief at trial or for purposes of impeachment any evidence that the defendant may be entitled to discover under Rule 16.

14.        This demand is made so the defendant can intelligently move to suppress evidence pursuant to Rule 12(b)(3)(C).

15.        Counsel requests notice of the intention to use any such statements and a full description of the circumstances in which they may have been made, as well as any documents pertinent to this issue.

16.        Accordingly, Mr. Olivero reserves his right to move to suppress any statements taken in violation of his Fifth Amendment and Fourth Amendment rights; or in the alternative, requests that a hearing be conducted to resolve any outstanding factual issues.

## II

## MOTION TO EXCLUDE STATEMENTS BY NON-TESTIFYING CO-CONSPIRATORS

17.        Pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), and the Sixth Amendment to the United States Constitution, Mr. Olivero respectfully requests that the Court bar the admission into evidence of all post-arrest statements by non-testifying co-conspirators/co-defendants which may implicate her in any way.

18.        In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a defendant's Sixth Amendment right of cross-examination was violated when a non-

testifying co-defendant's confession, implicating the defendant, was introduced at their joint criminal trial. *Bruton*'s protection of defendants' Sixth Amendment confrontation and cross-examination rights remains a linchpin of joint criminal trials.

19.       Although in *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court approved the use of non-testifying co-defendant confessions where all reference to the defendant's existence are eliminated and a limiting instruction is used, the continued vitality of *Bruton* and broad protections of the Sixth Amendment were demonstrated by the Supreme Court's recent decision in *Olivero v. Maryland*, 523 U.S. 185 (1998). There, the Court applied *Bruton* to a case where reference to the defendant's existence was eliminated in the confession, but deletions in the confession were marked with a blank or "deleted." The Court found that the defendant's Sixth Amendment rights were violated. *Cf. Lilley v. Virginia*, 527 U.S. 116 (1999) (admission of non-testifying accomplice's confession violated Confrontation Clause).

20.       Mr. Olivero has not received discovery of post-arrest statements by co-conspirators or co-defendants, Mr. Olivero cannot know whether the government will seek to use such evidence against her, or even if other statements exist. Therefore, Mr. Olivero makes this motion to exclude any such statements, and requests leave to amend and supplement it, and to file an additional memorandum of law or memorandum in support, after she has received full discovery and can apply the applicable authorities to the facts presented.

### III

### MOTION FOR A BILL OF PARTICULARS

21.        Mr. Olivero requests an Order, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, requiring the government to provide a written bill of particulars as requested below.

22.        The Indictment charges Mr. Olivero with conspiring with other individuals to possess with intent to distribute various controlled substances.  It does not list particular dates on which Mr. Olivero did anything in furtherance of the conspiracy.  Furthermore, while your deponent has been provided with some voluntary discovery by the government, there is no information in that discovery which provides any information or evidence linking Mr. Olivero to a conspiracy to possess with the intent to distribute controlled substances set forth above in any amounts.

23.        As the Court well knows, Rule 7(f) of Federal Rules of Criminal Procedure permits the Court to direct the filing of a bill of particulars.  As recognized by the Second Circuit, a bill of particulars has three functions:  (1) to inform the defendant of the nature of the charge against her with sufficient precision to enable her to prepare for trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable him to plead an acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, indefinite or lacks specificity.  *United States v. GAF Corp.*, 928 F.2d 1253 (2d Cir. 1991); *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988); *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987).  The particulars requested are also necessary because the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.  *United States v. Torres*, 901 F.2d 205 (2d Cir. 1990).

24.        Without such specification as to the nature of her allegedly improper conduct, Mr. Olivero is without ability to prepare for trial and the danger of surprise at trial is greatly increased.  *See*, *also*, *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (prosecutor was required to advise the defendant, through a bill of particulars, which specific documents they intended to rely upon in a mail fraud prosecution).

25.        As recognized by the Court in *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989),

> Prior to 1966, Rule 7(f) limited bills of particulars to those situations in which the moving party demonstrated the cause for his request. By amending the rule in 1966 to eliminate the cause requirement, the drafters expressly sought "to encourage a more liberal attitude by the courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases."  Fed. R. Crim. P. 7 Advisory Committee's note to 1966 amendment.  Consistent with this shift, the case law now recognizes that motions for bills of particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial.

26.        In accordance with these principals, we request that the specified particulars be supplied because without such information counsel's ability to prepare a defense is significantly impaired and it is likely that prejudicial surprise at trial will occur.

27.        For the reasons set forth above, and for the additional reasons set forth below, the defendant requests the following particulars as to each count (i.e., each separate conspiracy):

> a.    A list of all unindicted co-conspirators, regardless of whether the government intends to call any co-conspirator as a witness at trial.  *See United States v. DeGroote*, 122 F.R.D. 131, 137-39 (W.D.N.Y. 1988) (collecting cases);

*United States v. Feola*, 651 F. Supp. 1068, 1133-34 (S.D.N.Y. 1987), *aff'd.*, 875 F.2d 857 (2d Cir. 1989) (mem.);

b.    The specific times, dates and locations when and where Mr. Olivero and other co-conspirators combined and agreed to possess with intent to distribute the controlled substances in question.

c.    Where "elsewhere" the co-conspirators allegedly conspired;

d.    How the co-conspirators, including Mr. Olivero, knowingly, willfully and unlawfully combined, conspired and agreed together to possess with intent to distribute the controlled substances in question;

e.    List all uncharged overt acts taken by the co-conspirators, including Mr. Olivero;

f.    List the exact weight of all controlled substances that Mr. Olivero allegedly conspired with co-conspirators to possess with intent to distribute, and the date(s) on which he conspired to possess each amount of cocaine; and the weight of any controlled substance she possessed with the intent to distribute or did distribute.

g.    Whether or not any individual present during the commission of any alleged overt acts was acting for the government, and the names, or names then used or similar identification, or any such person;

i.    The names, to the extent known, of any persons present when the overt and substantive acts allegedly took place;

j.    The dates, to the extent known, when each defendant joined the conspiracy, and the date on which the conspiracy ended, including the dates when each defendant left the conspiracy, if different than the alleged ending date. *See United States v. Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989); *United States v. DeGroote*, 122 F.R.D. 131 (W.D.N.Y. 1988); *United States v. Scott*, 93-CR-26E (W.D.N.Y. 1994); and,

k.     The quantity of controlled substance distributed and possessed by each defendant and each co-conspirator during the course of the alleged conspiracy to the extent that this information will be presented by the government at trial and the date, time and place of each act in furtherance of the conspiracy.

l.     State with particularity with whom the defendant agreed to conspire to commit the offenses set forth in the indictment and the dates times and places where he agreed that such acts be committed.

m.    State with particularity what the government intends to prove in order to establish the existence of the agreement.

n.    State with particularity what the defendant knew and how he agreed to commit the charges contained in the indictment. *United States v. Yannotti*, 541 F3d 112, 121-22 (2d Cir., 2008).

o.    State with particularity what goals the defendant adopted in furthering or facilitating the criminal charges. *United States v. Ciccone*, 312 F3d 535, 542 (2d Cir., 2002).

p.    State the identities of all co-conspirators known to the defendant and the government. *United States v. Rastelli*, 870 F2d 822, 828 (2d Cir., 1989).

q.    State the date that the defendant entered into the conspiracy. State with particularity all of the agreements the defendant made with respect to his participation in the conspiracy and state with particularity the date when the defendant's involvement with the conspiracy ended.

r.    State with particularity what goals the defendant adopted in furthering or facilitating the criminal endeavor. In that regard, state the dates, times and places for all acts committed by the defendant as is set forth in this request for a bill of particulars.

s.    State with particularity what, if any, substantive offenses the defendant committed. In that regard, state the dates, times and places that the defendant committed such substantive offenses.

8

t.     State with particularity what criminal acts the defendant knew of by other individuals either charged or not charged in the indictment, which were foreseeable to him.

u.     State whether it is charged that the defendant committed acts other than those charged in the indictment.

v.     State with particularity the dates, times and places where the defendant knowingly, willfully and unlawfully combined, conspired and agreed together and with others to commit the offense as set forth in the 1st count of the indictment.

w.     State whether it is alleged that the quantities of the controlled substances as set forth in the 1st count of the indictment are aggregated over the period set forth in the indictment.

x.     State with particularity whether the defendant specifically acted upon her agreement with others to combine, conspire and distribute the controlled substance as set forth above.

y.     State with particularity as to the defendant Jose Olivero the dates, times and places that the defendant actually committed the acts set forth in the indictment.  Provide to the defense all circumstances and facts upon which the government intends to rely relative to the defendant's commission of those acts contained in the 1st count of the indictment.

z.     As to counts 2, 5, 6 and 8 provide the dates, time, places and locations that the defendant committed the crimes as set forth in the indictment.

aa.    State whether the government has any lab reports attributable to those counts in the indictment.

28.          In *United States v. Barnes*, 158 F3d 662 (2d Cir., 1998) the Second Circuit Court of Appeals had occasion to determine whether and, under what circumstances an expanded bill of particulars should be granted.  There, the court found that the indictment

9

provided "not a shred of detail" and, therefore, the defendant was entitled to be otherwise apprised of the conduct that he was alleged to have undertaken in furtherance of a multi-faceted if not "multiple, conspiracy." (Relying on *United States v. Ramriez*, 602 F. Supp. 783, 793 (SDNY, 1985); *United States v. Feola*, 651 F. Supp. 1068, 1133 (SDNY, 1987), *aff'd*, 875 F2d 857 (2d Cir.), cert denied, sub nom. *Marin v. United States*, 493 US 834 (1989).

29.        Indeed, the court went on to state that it was of no consequence that the information which was requested by the defense would have required the "disclosure of evidence or the theory of the prosecution." The court found that specifically that "while a bill of particulars is not intended as such, as a means of learning the government's evidence and theories," if necessary to give the defendant enough information about the charge to prepare his defense, 'it will be required even if the effect is disclosure of evidence or of theories' " (citation omitted).

30.        The court should only deny a bill of particulars where the information sought by the defense is actually provided in the indictment. Here, the indictment is clearly "bare bones" and provides virtually no details concerning approximately 11 years covered by the indictment. *United States v. Bortnovsky*, 820 F2d 572, 574 (2d Cir., 1987).

31.        Likewise, in *United States v. Davidoff*, 845 F2d 1151 (2d Cir., 1988) the court noted that where, as here, the defendant has been charged in an essentially "bare boned indictment under RICO, the denial of his request for bill of particulars was reversible error.

32.        Significantly, the court in *Davidoff* wrote:

> These principles must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO. With the wide latitude afforded the prosecution to frame a charge that a defendant has "conspired" to promote the affairs of

an "enterprise" through a "pattern of racketeering activity" comes
an obligation to particularize the nature of the charge to a degree
that might not be necessary in the prosecution of crimes of more
limited scope.

33.      In *Davidoff*, the court noted that the indictment charge a RICO
conspiracy which lasted over 7 years and was carried out by various forms of offenses.

34.      With all of that in mind, it is requested that the Court grant the above
requested particularization *in toto*.

35.      Whether to grant a bill of particulars rests within the sound discretion of
the district court.  *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir. 1984).  A bill of
particulars is particularly important in complex cases, such as conspiracy cases covering an
extended period of time.  See, e.g., *United States v. Davidoff,* 845 F.2d 1151 (2d Cir. 1988).  The
fact that evidentiary details or the government's theory of the case may be revealed is
insufficient reason to deny a reasonable request for a bill of particulars.  *United States v. Greater
Syracuse Board of Realtors*, 438 F. Supp. 376 (N.D.N.Y. 1977).  *United States v. Calvi*, 830 F.
Supp. 221 (S.D.N.Y. 1993), is instructive regarding both the necessity and the importance of a
bill of particulars:

An order directing filing of a bill of particulars in regard to this
rather detailed indictment would be inappropriate in view of the
United States Attorney having responded to all other discovery
requests of the defense, and no claim of inadequacy of that
response having been made.

The prosecution is in the best position to know in advance of trial
whether any of its evidence is likely to produce surprise making it
difficult for the defense to cross-examine the applicable witnesses
or otherwise defend the case with full vigor.  If such a risk exists, it
will be in the interest of the United States to furnish further
information in advance of trial to avoid the need for a continuance

11

> during the trial to alleviate any adverse consequences which may flow from such surprise.
>
> Rule 7(f) of the Federal Rules of Criminal Procedure does not require the United States Attorney to furnish a three dimensional colored motion picture of the prosecution's proof prior to trial. In the event that actual unfair surprise can be shown, an appropriate continuance may be considered.

*Id.* at 223. *Calvi* directly correlates the need for a bill of particulars with the amount of detail in the indictment. Although the reported decision in *Calvi* does not set forth the indictment *in toto*, the indictment there was obviously much more detailed than the indictment here, which does little more than track the statutory language over a period of years. Here, the Indictment is fairly characterized as "bare bones," and in order to adequately prepare a defense to these charges and for trial, the Court should order the government to file a bill of particulars providing the information requested above.

## IV

## MOTION FOR REVELATION OF
## IDENTITY OF INFORMANTS

36.     Defendant Olivero hereby moves this Court, pursuant to the provisions of Rule 16 of the Federal Rules of Criminal Procedure and the Fifth Amendment to the United States Constitution, for an Order requiring the government to disclose the following information:

    (a)    The identity of any and all informants possessing information which may be material to defendant's alleged guilt or innocence;

    (b)    The identity of any and all informants who were present at any of the events which are described in the instant indictment;

(c)     Any and all government reports containing information received from any informant referenced above which may be material to the instant case.

37.      This motion is made on the grounds that the informants are percipient witnesses to the allegations contained in the instant indictment and may also possess exculpatory and exonerating information.  With respect to item (c), Mr. Olivero requests these reports on the ground that, to the extent he has been unable to review reports containing factual information relayed by that informant, she has been unable to lay proper factual foundation for the disclosure of the informant.  At a minimum, defendant seeks to have all reports described above submitted <u>in camera</u> to the Court for review and subsequent disclosure to counsel.  In the event that the Court does not compel disclosure of this information and the identities of the informants, defendant respectfully requests that all government reports be sealed and made part of the record in the instant case.

### A.     The Government is Obliged to Disclose the Identity and Whereabouts of Informants and to Make Them Available to the Defense.

38.      In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623 (1957), the United States Supreme Court held that whenever an informant's testimony may be relevant and helpful to the accused's defense, his or her identity must be revealed.  The *Roviaro* Court set forth the following general standard for disclosure:

> Where the disclosure of an informant's identity or the contents of his communications is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must be waived.  In these situations, the trial court may require disclosure and, if the government withholds the information, dismiss the action.

*Roviaro v. United States, supra*, 353 U.S. at 60-61.

13

39.          The Court made clear that, while there is no fixed rule with respect to disclosure, four considerations are relevant:  (1) the crime charged; (2) the possible defenses; (3) the possible significance of the informant's testimony; and (4) other relevant factors.

40.          The "relevant and helpful" language of *Roviaro* has been interpreted by the Second Circuit "to require disclosure when it is material to the defense."  *DiBlasio v. Keane*, 932 F.2d 1038, 1041-1042 (2d Cir. 1991).  The *DiBlasio* Court recognized that:

> The judge must consider a number of factors in determining whether the informant's testimony is material:  "the crime charged, the possible defenses, the possible significance of the informant's testimony and other relevant factors."

*Citing*, *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1555 (1989), *quoting*, *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623 (1957).

41.          Similarly, the Ninth Circuit requires disclosure of the identity of an informant when he or she is a percipient witness.  Thus, in *United States v. Cervantes*, the Court recognized that a "percipient witness" must be disclosed:

> The government acknowledges that the informant Duque was a percipient witness to the transaction.  It therefore supplied Cervantes with the informant's identity.  *See*, *Roviaro v. United States*.

42.          *United States v. Cervantes*, 542 F.2d 773, 775 (9th Cir. 1976) (en banc).  The same result was reached in *United States v. Hernandez*:

> In light of [the informant'[s] role in the narcotics transaction with which appellants were charged, it cannot be said that disclosure of Smith's identity would not have been "relevant or helpful" to the appellant's defense . . .  Because [the informant] was a participant in the events that were critical to the prosecution's case, no claim could be raised under *Roviaro*, nor was it raised, that [the informant's] identity could be lawfully withheld from the appellants.  [Citations omitted].

*United States v. Hernandez*, 608 F.2d 741, 744-745 (9th Cir. 1979); *see also*, *United States v. Miramon*, 443 F.2d 361, 362 (9th Cir. 1971).

43.      The law is also clear that where an informant's testimony is essential to a fair determination, the government may be required to disclose his identity and address, if any. *United States v. Roberts,* 388 F.2d 646 (2d Cir. 1968). *See also, United States v. Anderson*, 509 F.2d 724 (9th Cir. 1975) (within the court's discretion to compel disclosure even when use of the informant goes only to probable cause). Further, the need for disclosure and production of the informant is mandated when the indictment contains a conspiracy charge and the informant could have information regarding either knowing membership in the conspiracy or possible entrapment. *United States v. Mormon, supra; Lopez-Hernandez v. United States*, 394 F.2d 820 (9th Cir. 1968); *Alexander v. United States*, 362 F.2d 379 (9th Cir. 1966).

44.      Obviously, it is not defendant Olivero' burden to prove what the informant would actually say if disclosed since the informant's unavailability makes that burden impossible to discharge in all cases. *See, e.g., United States v. Mormon, supra*, where disclosure should have been made because the informant "might have corroborated the (defendant's story)." *Id*. at 362. As stated by the Court in *United States v. Day, supra*:  "No matter how inert his role of participation he might still possess information relevant to a fair determination of the issues".

45.      As to all informants, the defense is entitled to a revelation of their whereabouts and addresses prior to trial so that sufficient investigation into their background can be made. As stated by the Court in *United States v. Hernandez, supra*:

> We recognize that the address of a principal witness, as [the informant] most assuredly was, is an integral element of identity for without such information, little meaningful inquiry can be made into the background information affecting credibility.

15

*United States v. Hernandez*, 608 F.2d 741, at 745 (9th Cir. 1979).

46.        In this case, therefore, the location and present whereabouts of any and all informant[s] must be immediately disclosed so that an investigation may be made into the credibility and background of the informant[s] prior to trial.  Further, any purported government assertion that there is some unspecified danger to informant[s] is insufficient to justify withholding the information concerning his or her whereabouts.  As *Hernandez* makes clear, the decision concerning potential "danger" must be made only after an evidentiary hearing.  *Hernandez, supra*, 608 F.2d at 745, fn.3.

47.        Finally, the government's obligation is not fully satisfied by merely disclosing the identity and location of the informant[s].  The defense here specifically requests that the informant[s] be produced.  The Ninth Circuit has held that government has an obligation to "accomplish this or show that, despite reasonable efforts, it was not able to do so".  *United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976) (en banc).  *See also, United States v. Cervantes*, *supra; Velarde-Villa Real v. United States*, 354 F.2d 9 (9th Cir. 1965).

48.        For the reasons cited above, it is apparent that each of the informant[s] in this case is a material witness.  The government should be ordered to disclose the identity of that witness and his or her whereabouts, and to make those witnesses available to the defense.  Failure to do so would require dismissal of the case.

**B.    Upon a Proper Showing, the Defendant is Entitled
         to Pre-Trial Access to Prosecution Witnesses.**

49.        Mr. Olivero recognizes that the general rule is that in a non-capital case, the accused has no constitutional right to require production of the names and addresses of

prospective witnesses. *See, e.g., United States v. Cole*, 449 F.2d 194, 198 (8th Cir. 1971), *cert. denied*, 405 U.S. 931, 92 S.Ct. 991 (1972). However, it should be noted that this rule is suffering from increasing erosion. For example, in *United States v. Baum*, 482 F.2d 1325 (2d Cir. 1973), the Second Circuit held that it was reversible error to deny pre-trial disclosure of the identity of a witness to the defendant's similar criminal conduct. *See also, United States v. Allstate Mortgage Corp.*, 507 F.2d 492 (7th Cir. 1974) (rule of *Baum* adopted and approved). Moreover, an order requiring pretrial disclosure of government witnesses is a proper exercise of judicial authority. *See, United States v. Richter*, 488 F.2d 170, 173-174 (9th Cir. 1973) (affirming the authority of the trial court to order pre-trial discovery of prospective government witnesses); *United States v. Jackson,* 508 F.2d 1001, 1006-1007 (7th Cir. 1975) (a trial court can enter and order <u>sua</u> <u>sponte</u> and without a showing of materiality requiring pre-trial disclosure of prospective government witnesses.

50.        The United States Supreme Court first addressed the disclosure of government witnesses in *Alford v. United States*:

> Cross-examination of a witness is a matter of right. Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment; and that facts may be brought tending to discredit the witness by showing that his testimony in chief as untrue or biased . . . . Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. [Citations omitted].
> *Alford v. United States*, 282 U.S. 687, 688, 51 S.Ct. 218, 219 (1931).

51.        Subsequently, in *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748 (1967), the Supreme Court reconsidered the rule of *Alford v. United States* and held that the failure to disclose

17

the address of a primary prosecution witness was a denial of the defendant's Sixth Amendment right to confront and cross-examine witnesses. The Court stated:

> The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself. Id. at 750.

52.        Therefore, it is the defendant's position that an accused has the right to know the identity and location of prospective government witnesses so that he may interview them prior to trial in order to put such witnesses in proper setting for purposes of credibility and cross-examination.

53.        Based, then, on the reasons cited above, it is respectfully requested that the identity and location of the prospective government witnesses be disclosed and that they be produced by the government prior to trial. If the government requests a protective Order the defense will agree.

54.        Disclosure of informant information in this prosecution is essential to a fair determination of the charges filed against the defendant. Much of what the government's evidence in this case appears to be is based on cocaine and marijuana trafficking that in no way is tied to Mr. Olivero. Mr. Olivero is entitled to know whether these government informants, who are criminals based on their actions in purchasing drugs and participants in and witnesses to criminal activity – have any knowledge of whether Mr. Olivero was involved in alleged criminal activity.

55.        In addition, the defense demands the following information about all informants:

a.        All evidence affecting the issues of bias or credibility;

18

b.   Their criminal records, *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980);

c.   All promises or consideration of any kind given to the informants, *Giglio v. United States*, 405 U.S. 150 (1972);

d.   Identification of the informants' prior testimony, *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975);

e.   Evidence of psychiatric treatment of each informant or cooperating witness or person, *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983);

f.   Evidence of the informants' narcotic habits, *United States v. Fowler*, 465 F.2d 664 (D.C. Cir. 1972);

g.   Whether the informants are being compensated, including favorable plea agreements, in return for their cooperation with the government.  *United States v. Morell*, 524 F.2d 550 (2d Cir. 1975); and,

h.   A review of the informant file kept by the authorities for each informant.

56.    The inherent unreliability of the testimony of an accomplice or government informant underscores the need for complete disclosure of information relating to credibility.  *See United States v. Bagley*, 473 U.S. 667 (1985); *Perkins v. LeFevre*, 642 F.2d 37 (2d Cir. 1981); *United States v. Caldwell*, 466 F.2d 611 (9th Cir. 1972).  Put another way, "[t]he use of informants to investigate and prosecute persons is fraught with peril."  *United States v. Bernal-Obeso,* 989 F.2d 331 (9th Cir. 1993).  For these reasons, the identifies and information requested above should be disclosed by the government to Mr. Olivero.

**V**

**MOTION FOR DISCOVERY PURSUANT TO**
**RULE 16 AND NOTICE OF INTENTION**
**PURSUANT TO RULE 12**

57.        The government has provided voluntary discovery, including wiretap affidavits.

58.        However, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A)(B)(C) & (D), the defendant now moves to compel discovery of any items or information to which the defendant is entitled. *Specifically*, this request includes, but is not limited to, the following:

a.    copies of any and all records, including reports and/or logs, relating to the alleged conspiracy and the arrest of all co-conspirators;

b.    copies of all records, including reports and/or logs, regarding radio transmissions from the officers at any search warrant or arrest scene regarding the investigation;

c.    copies of any and all reports relating to the booking process in this case;

d.    copies of any reports and/or test results relating to determination of drug quantity or type of drug;

e.    copies of any and all photographs taken relating to this investigation;

f.    copies of any and all documents and photographs seized on the day of any searches in this case;

g.    inspection of all items seized from the defendant on the day of her arrest;

h.    disclosure of the names and identities of expert witnesses the government intends to call at trial, their qualifications, subject of testimony, and reports, and the results of tests, examinations or experiments which are material to the preparation of the defense or which are intended for use by the government as evidence-in-chief at the trial;

     i.      a copy of any search warrant or arrest warrant applied for and/or issued or denied during the course of this investigation (whether state, federal or local). It is specifically requested that the defendant be provided with the search warrant, search warrant application and all notes prepared during any in camera proceedings; and

     j.      pursuant to Rule 12(d) of the Federal Rules of Criminal Procedure, the defendant requests written notification of any evidence that the government intends to use in its case-in-chief that may, in any way, be subject to a motion to suppress and which the defendant is entitled to discover pursuant to Rule 16.

59.      Pursuant to Rule 16, Mr. Olivero requests that the government provide him with discovery as provided by that Rule, to the extent that they have not already done so. Mr. Olivero notes that the government has provided the defense access to some discovery documents in their possession, and has agreed that the defense, upon reasonable notice, will be permitted continued access to such material, as well as the ability to copy the same. Nevertheless, this motion is brought to preserve the defendant's discovery rights and so that defendant may intelligently file a motion to controvert the search warrant and suppress evidence.

60.      Rule 12(b) establishes a procedure for notifying a defendant of the government's intention to use certain evidence at trial. The express purpose of this procedure is to afford an opportunity for submission of pre-trial motions seeking the suppression of such evidence [Rule 12(b)(1), and (3)(2). Specifically, Rule 12(b)(4)(B) provides that at the defendant's request, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), she may request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

61.      To the extent that the government complied with Rule 12(b), they need only so note on the disclosure notice.

62.        Therefore, pursuant to Rule 12(b), request is hereby made for the immediate disclosure by the government of a notice setting forth any evidence which the defendant may be entitled to discover under Rule 16 which the government intends to utilize at trial, including, but not limited to:

### Statements of Defendants

63.        Mr. Olivero hereby requests notification of any relevant written or recorded statements made by him and his co-defendants, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; that portion of any written record containing the substance of any relevant oral statement made by the defendants whether before or after arrest in response to interrogation by any person then known to the defendants to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged.  The government must also disclose to the defendant the substance of any other relevant oral statement made by her whether before or after arrest in response to interrogation by any person then known by the defendants to be a government agent if the government intends to use that statement at trial. Upon request of a defendant which is an organization such as a corporation, partnership, association or labor union, the government must disclose to the defendant any of the foregoing statements made by a person who the government contends (1) was, at the time of making the statement, so situated as a director, officer, employee, or agent as to have been able legally to bind the defendant in respect to the subject of the statement, or (2) was, at the time of the offense, personally involved in the alleged conduct constituting the offense and so situated as a director, officer, employee, or agent as

to have been able legally to bind the defendant in respect to that alleged conduct in which the person was involved.

## Defendant's Prior Record

64.        Mr. Olivero hereby requests a copy of her prior criminal record, if any, as is within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government.

## Documents and Tangible Objects

65.        Mr. Olivero requests the following: (1) any tangible items within the government's possession, custody and/or control which the prosecutor intends to use as evidence in chief; (b)  any tangible items within the government's possession, custody and/or control which was obtained from the defendants or which belong to the defendants; (c) any tangible items within the government's possession, custody and/or control which is material to the preparation of the defendant's defense; and (d) any and all recordings of any conversations which pertain to any of the facts alleged in the instant Indictment.

## Intercepted Communications

66.        Mr. Olivero hereby requests notification of the existence of any and all Title III surveillance, or any electronic surveillance conducted pursuant to federal, state or local warrant, including any intercepted communications (audio and/or video intercepts) or evidentiary leads derived therefrom, and a statement as to whether they were acquired in the presence or absence of court authorization.

23

1.      If acquired by warrantless means, disclosure is requested as to the following:

(a)     specifications of the name and address of the participant in each such communication who ostensibly consented to interception of same;

(b)     reproduction of any technical or physical surveillance logs respective of each communication so intercepted;

(c)     reproduction of any transcripts purporting to memorialize the content of each communication so intercepted; and

(d)     any instructions by the supervising agency to each participant who purportedly consented to the interception.

67.      As to each and every intercepted communication, counsel further seeks an opportunity to examine and inspect the electronic equipment used to intercept and record each communication constituting the subject of electronic surveillance.

68.      If acquired by eavesdrop order(s), disclosure and duplication is requested as to the following:

(a)     each eavesdrop order and each amendment and extension order;

(b)     the application affidavits and all other supporting documents which preceded each such eavesdrop, amendment and/or extension order;

(c)     all progress reports (10 day orders) which relate to any eavesdrop, amendment and/or extension order;

(d)     any technical and/or physical surveillance logs;

(e)     all minimization instructions to the executing agency(s); and minimization logs; and

(f)     all sealing order(s) which relate to any of the aforementioned orders. (Counsel is not in possession of any sealing orders).

24

(g)    All notes taken contemporaneiously to the interepted communications.

**<u>*Search and Seizure*</u>**

69.        In order to preserve his rights, to the extent not yet provided, Mr. Olivero hereby seeks notification of whether any evidence to be offered at trial consists of or was derived from the "fruits" of any search and/or seizure authorized by virtue of a judicial and/or administrative search warrant.

70.        In the event that any such evidence consists of or was derived from the "fruits" of any judicial and/or administrative search warrant as referred to above, request is made for:

(a)    a copy of each such search warrant;

(b)    a copy of each written search warrant application together with any supporting affidavit(s) and *in camera* proceedings;

(c)    a copy of each voice recording, stenographic transcript and/or longhand record with respect to any oral search warrant application;

(d)    a copy of any search warrant inventory return;

(e)    the exact time and date when the United States government entered into the investigation of the defendant or any co-defendant relative to the instant matter; and

(f)    In the event that any evidence was acquired in the fashion(s) referred to above, request is made for any item consisting of, derived from and/or purporting to memorialize the "fruit" of any search and/or seizure.

(g)    Provide to counsel a list of all items seized from any place where Mr. Olivero arguably had  a legitimate expectation of

privacy and provide the circumstances of the seizure of said
items and whether the seizures were pursuant to a warrant.

## Identification

71.        Mr. Olivero requests notification of whether any evidence to be offered at trial relates to or is derived from an identification of defendant Olivero' person, voice, handwriting, her picture and/or a composite sketch purporting to embody his facial features.

72.        In the event that any such evidence will be offered at trial, a statement is requested setting forth the following:

      (a)    the exact date, time and place where the identification proceeding occurred; and

      (b)    the substances of the identification proceeding to include the names of all persons present thereat.

73.        If any such evidence to be offered at trial relates to non-corporeal identification proceedings, request is made for access to any and all pictures, sketches, voice exemplars, and/or handwriting specimens utilized during the course of any such identification proceeding.

## Reports of Examinations and Tests

74.        Mr. Olivero respectfully requests disclosure of any and all results of any physical, mental and/or scientific examinations, tests and/or experiments within the prosecution's possession, custody and/or control which are either intended by the prosecution to be used as evidence in chief or which are material to the defense preparation and have not been previously provided.

## *Jencks* Material

26

75.        Mr. Olivero respectfully requests disclosure of *Jencks* material (18 U.S.C. 3500) at least 60 days in advance of trial so as to permit its meaningful use by the defense.

76.        It is respectfully requested that the defense motion for discovery and inspection pursuant to Rule 16, and notice of intention be granted.

## VI

## MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL

77.        Pursuant to the prosecution's obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976), *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985) and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995), Mr. Olivero hereby moves the Court for the immediate disclosure of all exculpatory and/or impeaching material in the prosecution's possession, custody or control or which is otherwise known to the prosecution, including, but not limited to, the following:

(a)    Any and all information and/or material which tends to exonerate Mr. Olivero or which tends to show that he did not knowingly commit any offenses alleged in the indictment.

(b)    Any and all evidence which tends to impeach the credibility of any prospective government witness (including co-defendants), including, but not limited to:

(1)    Any and all records or information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including but not limited to, relevant "rap sheets" of each witness the prosecutor intends to call at trial;

27

(2)     Any and all records and information revealing prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness, including co-defendants, the prosecutor intends to call at trial;

(3)     Any and all allegations of prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness, including co-defendants, the prosecutor intends to call at trial of which the prosecutor knows or through the exercise of reasonable diligence should have reason to know;

(4)     Any and all consideration or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police or informers, to or on behalf of any witness, including co-defendants, or on behalf of a relative of any such witness or co-defendant, the government intends to call at trial, or any such consideration or promises expected or hoped for by any such witness, or relative of any witness, at any future time.  Such "consideration" refers to anything which arguably could be of value or use to a witness, or relative of the witness, including but not limited to: formal or informal, direct or indirect, leniency; favorable treatment or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative, regulatory, disciplinary or other matter involving the state or federal government or agency thereof, any association, (including legal association), any other authority, or other parties; civil, criminal or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees and special witness fees; provisions of food, clothing, transportation, legal services, alcohol or drug related rehabilitation services or other benefits; placement in a "witness protection" program; informer status of the witness; letters to anyone informing the recipient of the witness' or the relative's cooperation; recommendations concerning licensing, certification or registration; recommendations concerning federal aid or benefits;

28

promises to take affirmative action to help the status of the witness or co-defendant, or relative of the witness or co-defendant, in a profession, business or employment or promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of a witness, or a relative of the witness; and anything else which arguably could reveal any interest, motive or bias of the witness in favor of the prosecution or against any defendant or which could act as an inducement to testify or to color his testimony;

(5)    Any and all statements -- formal and informal, oral or written -- by the prosecution, its agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possible or likely course or outcome of any government action -- state or federal, civil or criminal -- or licensing, matters against the witness, including co-defendants, or anyone related by blood or marriage to the witness;

(6)    Any statements read or made by the government to the departments of pre-trial services or probation in connection with the prosecution or conviction of any prosecution witness or potential prosecution witness;

(7)    Any and all threats, express or implied, direct or indirect, or other coercion directed against any witness, or against a relative of such witness, whom the prosecutor intends to call at trial; criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against any such witness, or relative of such witness; any probationary, parole, deferred prosecution or custodial status of any such witness, or relative of such witness; and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions involving any such witness, or relative of such witness or co-defendant, and the state or federal government, any agency thereof or any regulatory body or association or over which the state or federal government, agency, body or association has real, apparent or perceived influence;

29

(8)     A list of any and all requests, demands or complaints made of the government by any witness, including co-defendants, which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness or co-defendant for favorable governmental action in his behalf or on behalf of a relative of such witness (regardless of whether or not the government has agreed to provide any favorable action);

(9)     With respect to each witness and/or co-defendant the government intends to call at trial, or any member of the immediate family of any such witness, copies of all indictments, complaints or informations brought against such person by the federal, or any state or local government, all administrative, disciplinary, regulatory, licensing, tax, customs, or immigration proceedings brought by the federal, or any state or local government, or by any regulatory body or association, and, state what counts or actions have been the subject of guilty pleas, convictions, consent decrees, dismissals, or understandings to dismiss at a future date; the date or dates on which pleas of guilty, if any, took place; and the names of the judges or hearing officers before whom such pleas were taken. If the government does not have copies of all indictments, complaints, or proceedings, state the dates and places of arrests, hearings, indictments, and information, the charges brought, and the disposition of those charges or matters so far as it is known to the government;

(10)    With respect to each witness and/or co-defendant the government intends to call at trial, or any member of the immediate family of any such witness, a written summary of all charges or proceedings which could be brought by the federal, or any state or local government, but which have not or will not or which the witness believes have not or will not be brought because the witness is cooperating with or has cooperated with the government, or for any reason. Include copies of all memoranda of understanding between the government and its witnesses, whether

by way of a letter to the attorney for a witness or otherwise;

(11) Any material not otherwise listed which reflects or evidences the motivation of any witness and/or co-defendant either to cooperate with the government or any bias or hostility against any defendant; the existence and identification of each occasion on which a witness has testified before any court, grand jury, administrative, regulatory, disciplinary body or other association, or otherwise officially narrated herewith, in the investigation, the indictment or the facts of this case, and any testimony, statements or documents given by the witness regarding same;

(12) All judicial proceedings in any criminal cases, and all regulatory, association or disciplinary proceedings of which the government knows or through the exercise of reasonable diligence should have reason to know in which testimony by any person has been given, regarding the misconduct, criminal acts or bad acts of any witness the government intends to call at the trial of this action;

(13) Any statements or documents, including but not limited to, judicial, regulatory, administrative, disciplinary, association or grand jury testimony, or federal, state or local tax returns, made or executed by any potential prosecution witness or co-defendant in the trial in this action, which the prosecution knows or through the exercise of reasonable diligence should have reason to know, is false;

(14) Any and all records pertaining to any civil lawsuits, arbitration proceedings or other proceedings between any defendant and any witness, or any company with which any defendant or any government witness may have been affiliated, including, without limitation, records or statements pertaining to the investigation, conduct and disposition of such litigation;

(15) Copies of all medical and psychiatric reports known to the prosecutor or which can reasonably be known to the prosecutor concerning any witness and/or co-

31

defendant the prosecutor intends to call at trial which may arguably affect the witness' credibility or his ability to perceive, relate or recall events;

(16)    All documents and other evidence regarding drug or alcohol usage and/or dependency by any individual the government intends to call as a witness at trial, including but not limited to records relating to treatment of such individual in any federal, state, city or military drug or detoxification program;

(17)    Any written or oral statements, whether or not reduced to writing, made by any potential prosecution witness and/or co-defendant which in any way contradicts or is inconsistent with or different from other oral or written statements he has made;

(18)    Any requests prepared by the prosecution for permission to grant formal or informal immunity or leniency for any witness and/or co-defendant, whether or not such request was granted;

(19)    The same records and information requested in items "(1)" through "(18)" with respect to each non-witness declaring whose statements will be offered in evidence at trial pursuant to Fed. R. Evid. 806;

(20)    Copies of any and all records of law enforcement agencies reflecting intradepartmental disciplinary action taken against any law enforcement official or agent who will testify at trial;

(21)    Copies of any and all records of any law enforcement or other governmental agency reflecting any commendations, awards or recognition or any kind, or requests for any commendations, awards or recognition of any kind made to or by any government agent or law enforcement officer for any work, action or conduct in connection with the investigation and prosecution of this case.

(c)    The name and address and written or oral statements made by any person, including co-defendants, with knowledge and information concerning the events charged in the indictment

32

and whose version of the same events is contrary to, or non-supportive of, the accusations set forth in the indictment.

(d)     The name and address and any written or oral statement made by any persons and/or co-defendants the government reasonably believes has information helpful to the preparation of the defense.

(e)     The name and address and any written or oral statement made by any witnesses or co-defendants to the offense charged in the indictment whom the government does not intend to call as witnesses in this case.

78.     Due process, as the constitutional phrase has been interpreted, requires that the government not suppress evidence favorable to a defendant or discrediting to its own case, and, upon request, that it disclose to the defense all such information. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976); *Pyle v. State of Kansas*, 317 U.S. 213, 63 S.Ct. 177 (1942). The requirement of disclosure extends to candor by the government witnesses as well as matters which relate more directly to guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972); *Napue v. People of the State of Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959). *See also, Williams v. Dutton*, 400 F.2d 797 (5th Cir. 1968), *cert. denied*, 393 U.S. 1105, 89 S.Ct. 908 (1969).

79.     The *Brady* rule grew out of a realization by the Supreme Court that the defendant's abilities for acquiring evidence are disproportionate to those of the government. Most defendants have neither the manpower nor the access and contacts available to the government in its investigation of crime. Thus, the prosecution is obliged to share the proceeds of its discovery with the defense where that evidence is favorable to the latter's cause. Indeed, the importance of *Brady* has been so strongly enforced that the Supreme Court, in *United States v. Bagley*, 473 U.S. 667, 105

S.Ct. 3375 (1985), unequivocally extended the duty of disclosure to information which may be used by the accused for impeachment at trial.

A.      **Time of Disclosure.**

80.         Effective preparation for trial is the cornerstone of effective representation of criminal defendants and disclosure of information which, in any of a variety of ways, impeaches the witness' credibility is consequently required <u>before</u> trial in order to enable effective preparation. As the Court in *United States v. Pollack* pointed out:

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure. [Citations omitted].

*United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976).

81.         The need for pre-trial disclosure of *Brady* material has been highlighted in several cases. In *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993), irreconcilable discrepancies between the informer's actual record and government representations about the prior record indicated the informer had misled his government handlers. The court vacated the conviction and remanded for an evidentiary hearing "to restore the parties" to their "pre-trial" position and to ascertain whether the informer had lied to the government. 989 F.2d at 336-337. *See also, United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir. 1990), *cert. denied*, 498 U.S. 921, 111 S.Ct. 299 (1990) (a government file which contained impeachment material regarding a prosecution witness should have been produced "prior to" the witness' testimony); *Gorham v. Wainwright*, 588 F.2d 178 (5th Cir. 1979) (under certain circumstances, delayed revelation of discoverable evidence may deny a defendant an effective defense); *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979) (harm was done by the pre-trial failure of the government to disclose the whereabouts of the informant; crucial

importance was given to pretrial opportunity to interview and/or investigate potential witness); *Grant v. Alldredge,* 498 F.2d 376, 381-382, n.5 (2d Cir. 1974) (failure of government to disclose before trial that bank teller picked out photograph of another individual was error); *United States v. Baxter, et al.,* 492 F.2d 150 (9th Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945 (1974) (delay in turning over requested favorable evidence is unconstitutional when delay in disclosure substantially prejudiced the preparation of the defense); *Clay v. Black*, 479 F.2d 319 (6th Cir. 1973) (per curiam) (pre-trial disclosure of an FBI scientific report would have permitted defense to establish necessary claim of custody to introduce certain blood stains); *United States v. Polisi*, 416 F.2d 573 (2d Cir. 1969) (the importance of *Brady* is to measure the effects of the suppression upon the defendant's preparation for trial); and *Hamric v. Bailey*, 386 F.2d 390 (4th Cir. 1967) (to be effective, disclosure must be made at a time when disclosure would be of value to the accused).

82.         Numerous district courts have ordered such discovery both before and after the 1975 amendments to the Federal Rules of Criminal Procedure.  *See, United States v. Thevis, supra* (delaying disclosure of *Brady* materials useful for impeachment until the night preceding the testimony is insufficient); *United States v. Five Persons*, 472 F.Supp. 64 (D.N.J. 1979) (by adoption of a standard order, district judges declared that the rights to due process and a fair trial require availability of *Brady* material within 10 days after arraignment); *United States v. Goldman*, 439 F.Supp. 337 (S.D.N.Y. 1977) (if exculpatory evidence is produced for the first time at trial, defendant may not have an adequate opportunity to effectively utilize the material; all *Brady* material to be provided "immediately"); *United States v. Dillard*, 419 F.Supp. 1000 (N.D. Ill. 1976) (in light of complex decisions of strategy and preparation, it is better practice to require disclosure in advance of trial); *United States v. Quinn*, 364 F.Supp. 432 (N.D. Ga. 1973), *aff'd on other grounds*,

514 F.2d 1250 (5th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1430 (1976) (*Jencks* Act timetable cannot control release of information to which defendant is constitutionally entitled).

83.　　　　The due process requirements of disclosure are reinforced by a federal court's supervisory powers.　In this federal prosecution, this Court can ensure that justice is administered properly in the federal courts by requiring immediate disclosure of the information sought, including impeachment materials.

### B.　**Impeachment Evidence.**

84.　　　　Mr. Olivero has itemized likely sources of impeaching information within the knowledge or reach of government counsel.　*United States v. Agurs, supra.*　Disclosure of this information is necessary in order for defense counsel to conduct an appropriate investigation and to conduct interviews and otherwise prepare for such trial proceedings as jury selection, opening statements and cross-examination.

85.　　　　At issue, from an impeachment standpoint, are the general principles of crediting and discrediting witnesses.　McCormick has identified "five main lines of attack upon the credibility of a witness":

> The first, and probably the most effective and most frequently employed, is an attack by proof that the witness on a previous occasion has made statements inconsistent with his present testimony.　The second is an attack by a showing that the witness is partial on account of emotional influences such as kinship for one party or hostility to another, or motives of pecuniary interest, whether legitimate or corrupt.　The third is an attack upon the character of the witness.　The fourth is an attack by showing a defect of capacity in the witness to observe, remember or recount the matters testified about.　The fifth is proof by other witnesses that material facts are otherwise than as testified to by the witness under attack.

1 McCormick on Evidence §33, at 111-12 (4th ed. 1992) (footnotes omitted).

86.        Discovery should extend to production of so-called "rap sheets" of the witnesses as well as any information concerning criminal conduct of prospective witnesses. Indeed, in requiring the production of this type of information, the Court in *United States v. Osorio*, 929 F.2d 753, 761 (1st Cir. 1991), described the government's obligation as "a constitutionally derived duty to search for and produce impeachment information . . ."

87.        The Supreme Court has recognized ". . . that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. at 419, 115 S.Ct. at 1555 (1995). The *Kyles* decision was followed by the Second Circuit in *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("the individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation"). *Kyles* was also followed by the Ninth Circuit in *United States v. Hanna*, 55 F.3d 1456 (9th Cir. 1995). The *Hanna* Court vacated the conviction and remanded for an evidentiary hearing to explore "inconsistencies" between the arresting officer's testimony and his conversations with fellow officers. *Id*. at 1460-1461.

88.        Mr. Olivero specifically requests the substance of any and all inducements, promises, compensation or consideration, broadly defined, which the government has held out to witnesses or which a witness subjectively anticipates to receive in exchange for testimony or assistance.

89.        The government has a constitutional obligation to disclose any and all consideration which is held out to a witness or which the witness subjectively hopes for and

37

anticipates since such consideration directly gives rise to the inference of bias or interest. *See, generally, United States v. Mayer*, 556 F.2d 245 (5th Cir. 1977) (cross-examination of a prosecution witness who has had prior dealings with the prosecution or other law enforcement officials "ought to be given the largest possible scope [citation omitted];" conviction reversed). *Id.* at 248. A common example of such matter which must be disclosed to the defense is the making of promises or the holding out of other inducements for a witness to cooperate and testify against the defendant. *See, e.g., United States v. Sanfilippo*, 564 F.2d 176 (5th Cir. 1977); *Annunziato v. Manson*, 566 F.2d 410 (2d Cir. 1977); *Boone v. Paderick*, 541 F.2d 447 (4th Cir.), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1610 (1977); and *United States v. Tashman*, 478 F.2d 129 (5th Cir. 1973).

90.         The duty of the government to disclose this information is an affirmative one and the ignorance of one prosecutor as to promises made to a government witness by another prosecutor does not excuse the failure to disclose. *Giglio v. United States, supra*. The obligation to disclose includes the total compensation or benefits paid to or expected by each witness. *United States v. Leja*, 568 F.2d 493 (6th Cir. 1977). The government must disclose both "the stick and the carrot," including threats to prosecute. *United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976).

91.         Numerous examples exist which make the principle of "consideration" clear. *United States v. Sutton, supra* (witness rendered a statement as an inducement to government informant); *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979) (witness' attorneys fees paid by State of Florida); *United States v. DiCarlo*, 575 F.2d 952 (1st Cir. 1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115 (1978) (assistance in the business world); *United States v. Garza*, 574 F.2d 299 (5th Cir. 1978) (information provided would result in no other indictments, heroin conspiracy indictment dismissed, bond in prior conviction on appeal would be lowered); *United*

*States v. Croucher*, 532 F.2d 1042 (5th Cir. 1976) (error to refuse defense counsel to cross-examine informer about prior arrests, other than ones resulting in convictions for felonies or misdemeanors involving moral turpitude); *United States v. Bonanno*, 430 F.2d 1060 (2d Cir. 1970), *cert. denied*, 400 U.S. 964 (1971) (failure to disclose outstanding indictment); and *Patriarca v. United States*, 402 F.2d 314 (1st Cir.), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633 (1969), *rehearing denied*, 393 U.S. 1124, 89 S.Ct. 987 (1969) (information provided would be brought to the attention of prosecution in other pending action; family assigned to protective custody). These examples, of course, are only intended to make the principle clear and do not exhaust the range of possibilities.

92.        The defendant has moved for specific information regarding the prior occasions when each witness gave testimony or otherwise made statements relative to the facts in this action. Witnesses' statements which are at least, in part, exculpatory and/or important for impeachment should be produced. *United States v. Miller*, 529 F.2d 1125 (9th Cir. 1976), *cert. denied*, 426 U.S. 924, 96 S.Ct. 2634 (1976); *United States v. Quinn, supra; United States v. Five Persons, supra;* and *United States v. Thevis, supra*. Witnesses' statements or other information which has been recorded on so-called 302 Forms by agents of the government which contain exculpatory material should also be disclosed. *Brady v. Maryland, supra*.

93.        Likewise, Mr. Olivero's request for the substance of all occasions known to the government on which an informer, accomplice or co-conspirator has previously testified, even if no direct relationship to the instant case is apparent, should be granted. A defendant should be afforded the widest possible latitude in investigation and cross-examination. In *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975), the point was clearly illustrated. There, a defendant was charged in an Iowa proceeding with a drug offense. The conviction was obtained with the involvement of a

paid informer who had worked in such a capacity in other jurisdictions, including Michigan. In light of the witness' modus operandi and his desire to maintain a continuing relationship as an informant with the law enforcement agencies, and his bias, it was a denial of due process to have refused to provide the defendant access to the informant's testimony in an earlier proceeding involving a separate drug sale in Michigan. Similarly, it amounts to a denial of due process in this instance to refuse to provide the requested information in this case.

94.        It has also been held that where a government employee serves as a prosecution witness, the defendant is entitled to have access to his or her government personnel file in order to ascertain whether there is information within it which could be of impeaching nature. *United States v. Deutsch*, 475 F.2d 55, 58 (5th Cir. 1973), *rev'd on other grounds, United States v. Henry*, 799 F.2d 203 (5th Cir. 1984). Similarly, in *United States v. Morell*, 524 F.2d 550, 552-55 (2d Cir. 1975), the Court of Appeals held that defense counsel were entitled to impeaching information in the confidential file of an informant witness. *See also, United States v. Beekman*, 155 F.2d 580 (2d Cir. 1946). As pointed out by one commentator, "This information is extremely valuable to the criminal or civil practitioner in thoroughly investigating and preparing any cases where the credibility of a police officer is at issue." Snyder, Discovery of Police Personnel Files in Criminal Proceedings, 52 Fla. Bar. J. 119, 122 (1979).

95.        In sum, the right of counsel for the accused to confront, cross-examine and impeach is cherished and remains the means by which "the scope and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105 (1974) (Burger, C.J.). Our specific requests for impeaching information are highly material for precisely this venerable mission. *See*, generally, *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979). Therefore, the prosecution

should be ordered to disclose the requested information or to show good cause for their failure to comply. *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

96.        It is respectfully requested that the defense motion for pre-trial disclosure of all *Brady* material be granted.

97.        The decision by the Second Circuit (*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001)) does not change or limit the District Court's ability to order pre-trial disclosure of *Brady* and impeachment evidence. Indeed, the Second Circuit in *Coppa* made clear that "[t]his case presents no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management." *Coppa*, 267 F.3d at 146. In a multi-defendant, multi-conspiracy, multi-drug case such as this, sound case management requires early disclosure of impeachment and *Brady* material. *Cf. United States v. Ruiz*, 241 F.3d 1157 (9th Cir. 2001) (right to waive undisclosed *Brady* material cannot be waived through plea agreement), *cert. granted*, 122 S.Ct. 803 (2002).

98.        Counsel specifically reserves the right to make additional requests for the material covered above at the time this motion is argued, or at such other time as the existence of such materials shall become known to counsel for the defendant, and it is respectfully requested that the prosecution be admonished that its duty under *Brady/Giglio* is a continuing one.

## VII

### MOTION FOR DISCLOSURE OF EVIDENCE PURSUANT TO RULES 404(b), 608 AND 609 OF THE FEDERAL RULES OF EVIDENCE

99.        Pursuant to Rules 12(b)(4), (d)(1) and (2) of the Federal Rules of

Criminal Procedure, and Rules 104(a) and 404(b) of the Federal Rules of Evidence, Mr. Olivero respectfully requests that the government notify him of any evidence that the government contends would be admissible under Rule 404(b) of the Federal Rules of Evidence.

100.    The defendant also request pretrial disclosure of any other evidence the government intends to use to impeach the defendant's credibility if he should choose to testify. In the event the government intends to use such evidence, the defendant requests a pretrial hearing to determine the admissibility of such evidence.

101.    The defense should be put on notice of the exact nature of this evidence, the witnesses pertaining thereto, the documents in support thereof, and the theory upon which the government asserts that admissibility rests.  By so notifying the defense in advance of trial, the defendant can file appropriate motion(s) *in limine* prior to trial and afford the Court the occasion to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence proffered by the prosecution.

102.    The defense requests discovery of all information pertaining to the character and/or conduct that may be used to impeach any witness the government intends to call.

103.    The pretrial determination of the admissibility of this evidence question will serve to ensure the smooth operation of the trial, eliminate possible extraneous objections and assist both the government and defense counsel in the presentation of evidence.

## VIII

## MOTION FOR DISCLOSURE OF WITNESS STATEMENTS

104.    Under 18 U.S.C. § 3500 (the "Jencks Act"), a defendant is entitled to

42

witness statements after the witness has completed his or her testimony on direct examination. This Court has, on a case-by-case basis, invoked its discretion to require production of Jencks Act statements in advance of the trial so that unnecessary delays will not take place during the course of the trial.

105.    Mr. Olivero requests the Court to order the government to deliver to counsel immediately, but in no event not later than eight weeks prior to the date of the trial, the following:

a.    any statement, however taken or recorded, or a transcription thereof, if any, made by the witness(es) to a grand jury;

b.    any written statement made by a witness that is signed or otherwise;

c.    adopted or approved by the witness;

d.    any stenographic, mechanical, electrical or other recording transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement;

e.    any and all rough notes of witness interview(s) taken or obtained in any investigation of the defendant including federal, state, local and other investigations whether or not the contents thereof have been incorporated in official records;

f.    any notes and memoranda made by government counsel during the interviewing of any witness intended to be called by the government in its direct case. *Goldberg v. United States*, 425 U.S. 94, 101-108 (1976); and,

g.    all surveillance reports made or adopted by a witness. *United States v. Petito*, 671 F.2d 68, 73 (2d Cir. 1932).

106.    In addition to avoiding unnecessary delays, sufficient pretrial delivery of *Jencks* material also insures that the defendant's fundamental rights to a fair trial and due process

43

are safeguarded.

## IX

## MOTION FOR PRESERVATION OF ROUGH NOTES
## AND OTHER EVIDENCE

107.          Mr. Olivero moves for an order of this Court requiring all government agents and officers who participated in the investigation of the defendants in this case to retain and preserve all rough notes taken as part of their investigation whether or not the contents of the notes are incorporated in official records.

108.          This motion is made so the trial court can determine whether disclosure of the notes is required under *Brady*, *Agurs*, *Giglio* and/or the Jencks Act (18 U.S.C. §3500) or the Fifth and/or Sixth Amendments of the United States Constitution.

109.          Mr. Olivero also requests an order of this Court requiring the government to preserve and protect from destruction, alteration, mutilation or dilution any and all evidence acquired in their investigation of the defendants.

## X

## MOTION FOR GRAND JURY TRANSCRIPTS

110.          Mr. Olivero moves the Court, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(i), for disclosure of transcripts of all testimony before and all exhibits considered by the grand jury that indicted her.   The Court should order production of the transcripts because defendant has a particularized need for the transcripts, outlined below, which outweighs the grand jury policy of secrecy.  *See, e.g.*, *Pittsburgh Plate Glass Company v. United States* , 360 U.S. 395, 400 (1959); *see also, e.g.*, *Dennis v. United States*, 384 U.S. 855, 868-75 (1966).

111.        Specifically, Mr. Olivero is the subject of a bare bones Indictment that does not state any particular acts or overt acts that he allegedly committed in the course of the conspiracy.  Except for the names of law enforcement officers and others in various interception applications, Mr. Olivero has no information as to who the witnesses against him will be.  The particularized need justifying disclosure is so that she is informed of what evidence actually exists against her, and so she can intelligently make a decision as to his course of action.  For these reasons, the grand jury transcripts and evidence should be disclosed to him.

**XI**

**MOTION TO CONTROVERT INTERCEPTION
ORDERS AND SUPPRESS EVIDENCE**

112.        Several telephone conversations in which Mr. Olivero was an alleged participant were recorded during the execution of a series of interception orders, making her an aggrieved person as defined by 18 U.S.C. §2510(11).[1]  Mr. Olivero moves to controvert the pertinent interception orders and to suppress the intercepted communications pursuant to 18 U.S.C. §2518(10)(a).

113.        Counsel has been provided with various interception applications and orders.  He has not received the ten-day reports and sealing orders.[2]  Thus, as it will be set forth herein, counsel does not have all such documentation.  As a consequence, your deponent will endeavor to controvert the interception orders but, counsel reserves his right to supplement, or otherwise modify, this motion when the government provides the information sought herein.

---

[1] We do not believe that we have been provided with all transcripts or tape recordings of the phone calls.  We request that all prepared transcripts be provided to counsel.

[2] The government has advised that it will make the sealing orders available for inspection.

114.        The following is a summary of all of the orders issued which are relevant

to the instant case and known to the defense:

a.    On August 10, 2020 Honorable Kenneth Case, an acting Supreme Court Justice, signed an eavesdrop warrant and amended eavesdrop warrant for a cell phone used by Carl Valdes-Sanches.  On August 10, 2020 Judge Case signed an Order authorizing the installation use of a pen register and caller ID device and delivery of real time cell site on GPS and/or precision location for Target Cell phone 1.

b.    Subsequently, on September 4, 2020 Judge Case also signed and eavesdrop Order ordering cell phone interceptions under 716-256-0035 and 716-380-3851 (Target Cell phone 2).

c.    The first eavesdrop Order was applied for by Deputy Sheriff Paul McMahon who is also assigned to the Drug Enforcement Administration (DEA).

d.    The applications to the search warrant were heavily redacted and, for purposes of this application, counsel asks that the government be Ordered to provide an unredacted application, under a protective Order as applied for.

e.    The officer indicated that in 2009 Jose Olivero had been investigated by various law enforcement officers.

f.    Thereafter, for the most part, the application by Investigator McMahon was redacted.

g.    Additionally, from pages 7 to about page 20 the application was fully redacted.

h.    As to Valdes-Sanches' Cell phone, Investigator McMahon outlined the amount of use of the Cell phone over a lengthy period of time.  He also indicated that Mr. Olivero had previously been arrested on a number of occasions in the past, going back to apparently 2013.

i.    The cell phone records further indicate that Valdes-Sanches had numerous contacts with an individual by the name of Dwayne Stefaniak.

46

115.        For the reasons set forth herein, obviously, the defense has no way to move, intelligently, to suppress the results of the eavesdrop warrants. In fact, there is nothing in the papers provided to the defense which indicates anything about the background of the case other than that set forth above.

116.        At paragraph 55, the investigator indicated that the investigation had utilized one confidential informant who provided information about Valdes-Sanches' illegal narcotic Fifth Gang activities. Much of the information relative to the CI is redacted.

117.        At paragraph 57 the investigator indicated that during the course of the investigation there had been some physical surveillance which had been utilized. The information was partially redacted, however.

118.        The investigator further indicated that he believed that there were cameras at the residence. The investigation further indicated, apparently, that 85 Trope Street in Buffalo was the primary residence of Mr. Olivero who, the agent claimed "we believe they are supplying Valdes-Sanches with cocaine." He indicated that the home was on a dead end street.

119.        He further indicated that Mr. Olivero had access to 5 different vehicles. The basis of the information was not set forth in the application for the eavesdrop Order. They indicated that a surveillance team observed Valdez-Sanches in his vehicle, his girlfriend's vehicle and a third vehicle.

120.        At paragraph 59 the investigator indicated that the surveillance they had conducted has resulted in some success, it has not led them to achieve their investigative goals. Much of the rest of the paragraph is redacted.

121.        Moreover, the investigator indicated that search warrants had been

47

utilized in this case on Valdes-Sanches' vehicle. As to Mr. Olivero, the investigator indicated that he had obtained a warrant to monitor the location of 716-380-3851 the cell phone which he believed to be used by Mr. Olivero.  Part of the surveillance was redacted.

122.    Counsel does not have a copy of the search warrant attributable to Mr. Olivero's tracking and we request permission to file a motion against it once we have been provided with the warrant and the application for the warrant.

123.    The investigator went on to talk about witness interviews and called detailed records/pen registers and caller identification devices.  He indicated that he had obtained subscriber information and called detail records for Valdes-Sanches' cell phone.  In the analysis that they conducted he indicated that it helped them to draw connections between Valdes-Sanches, Mr. Olivero and potential co-conspirators. He indicated, however, that call detail records "have their limitations."  In other words, he stated that without the concurrent use of electronic surveillance, he could only speculate as to who was conversing with whom.

124.    He indicated that he was applying for a pen-register, a caller ID device and real time cell site information for the cell phone. He did not indicate, however, why those applications were not made prior to his first application for an eavesdrop warrant.

125.    At paragraph 71 he indicated that from previous wiretapping investigations, narcotics traffickers will often cycle from one phone to the next by collecting important customers and sources of supply with the old phone to advise him of the new phone number.

126.    The investigator concluded that it was his belief that CI information, his conversations with law enforcement officers as well as other sources that the individuals named

above are part of an organization that distribute "significant quantities of narcotics in the City of Buffalo and elsewhere."

127.    However, information was further redacted and none of the information which he seems to attribute to probable cause have been provided to the defense at all.

128.    For the most part, most of the second eavesdrop application discussed intercepted calls under the first eavesdrop application signed in August, 2020.  For example, it was alleged that the conversation took place between Mr. Olivero and Valdes-Sanches. While nothing specifically was stated, the investigator guessed that the conversation involved drugs, although no drugs were discussed.

129.    Interestingly, as defense counsel noted above, Investigator McMahon had previously argued that it was impossible to do surveillance at Valdes-Sanches' home at 26 Bolton Street, Buffalo, New York.  However, paragraph 22 outlined the fact  that TEA Agent Brian Chella went to 26 Bolton, saw defendants Valdes-Sanches and Olivero.  It is interesting to note that in the previous application, the investigator claimed that surveillance was too difficult to do at that location even though apparently DEA Agent Chella had no problems doing surveillance at that area and numerous other areas.

130.    For the most part, as noted above, the second wiretap application recounted much of the information contained as a result of the execution of the first warrant.  As noted before, Mr. Olivero was intercepted under both eavesdrop Orders.

131.    Much of the conclusions drawn by Investigator McMahon come without any background information as to why he makes the surmises contained in the application.

132.    Beginning at paragraph 35 and continuing through paragraph 40, the

application is redacted.  Furthermore, from paragraphs 43 through 49 the application is again fully redacted.

133.         In fact, there were other equivocal statements such as the fact that Valdes-Sanches using his phone sent a text message allegedly to Mr. Olivero indicating "is it for sure today?"  No response was given to him.

134.         The application continues to be heavily redacted so that the defense cannot intelligently move to controvert the warrant based upon the information that we now have.

135.         A review of the application continues to indicate that phone calls were made between Mr. Olivero and Valdes-Sanches and various surveillance was conducted. However, from what counsel can see through review, no probable cause existed at all.

136.         With respect to alternative techniques, once again, much of the information was redacted.  However, there are instances where surveillance was successful as indicated above.

137.         Also, the entirety of all of the informant information contained in the application is fully redacted.  Once again, the government has not left the defense with a meaningful way to attack the eavesdrop Orders.

138.         Title 18 USC §2518(9) provides that the contents of any wire, oral, or electronic communication interception pursuant to Title 18 USC §2518 or evidence derived therefrom shall not be received in evidence or otherwise disclosed at any trial, hearing or other proceeding in a Federal or State court unless each party, not less than 10 days before the trial, hearing or proceeding has been furnished with a  copy of the court order, and  accompanying

50

applications under which the interception was authorized or approved.

139.         In addition, any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the United States may move to suppress the contents of any wire or oral communications intercepted pursuant to the statute (18 USC §2518(10)(a).  Such motion to suppress may be based upon the fact that the communication was unlawfully intercepted, the order of authorization or approval under which it is intercepted is insufficient on its face or that the interception was not made in conformity with the order of authorization or approval. Because Mr. Olivero was intercepted under both eavesdrop Orders, she has standing to move to suppress the orders.

140.         An aggrieved individual includes anyone whose telephone conversations were intercepted or any named interceptees and/or violators as provided in the application. Because Mr. Olivero was intercepted under the above Orders, she has standing to move to controvert all of the orders.

**XII**

**THE EAVESDROP APPLICATIONS FAILED TO ESTABLISH NECESSITY FOR THE EAVESDROPPING**

141.         As noted above, the federal wiretap statute requires that each application for an eavesdrop warrant must contain "a full and complete statement" establishing that normal investigative procedures have been tried and failed, or that they appear reasonably unlikely to succeed.  18 USC §2518(1)(c)

142.         In *United States v. Lilla*, 699 F2d 99, the Second Circuit Court of Appeals suppressed the fruits of a New York State issued eavesdrop warrant.  In pertinent part, the *Lilla* Court observed as follows:

51

> [t]he requirement of a "full and complete statement" regarding procedures attempted or considered prior to the application for a wiretap service both to underscore the desirability of using less intrusive procedures and to provide courts with some indication of whether any efforts were made to avoid needless evasion of privacy. Like other courts, we reject generalized and conclusory statements that other investigative procedures would prove unsuccessful (at p.104).

143.     The *Lilla* court also recognized the observation by United States Supreme Court that the necessity requirement is:

> …simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. *United States v. Kahn*, 415 US 143, 153, n.12, (at p. 102).

144.     The *Lilla* court went on to explicitly recognize that Congress had articulated a preference for more conventional investigative techniques, such as informant infiltration, physical surveillance and a pen registers.

145.     The *Lilla* court expressly rejected the government's generalized contention that a far-flung conspiracy was involved and it characterized the activity at hand as a "small time narcotics case." (at p.104); see also *United States v. Gonzoleous*, 412 F3d 1102, 1116 (9th Cir., 2005); *United States v. Blackmon*, 273 F3d 1204 (9th Cir., 2001).

146.     Based upon the reasons set forth above as well as below, it is respectfully submitted that the initial application failed to comply with the necessity requirements.

147.     Most of the factual assertions concerning the need for electronic eavesdropping contained in the McMahon applications were merely generalized statements not relevant to the instant case or were otherwise obvious boilerplate utterances designed to mislead the issuing judge. As noted, your deponent reserves his right to amplify this application once non-redacted applications have been provided to counsel. However, it does appear that physical

surveillance had already been utilized and was more than successful. In that regard, as can be seen from the McMahon applications, surveillance was utilized and targets were clearly developed based upon the utilization of physical surveillance.

148.     As a consequence, the necessity requirement was clearly not met.

149.     In Title III of the Omnibus Crime Control and Safe Avenues Act of 1968 (Title III) Congress struck a balance between the needs of law enforcement officials and the privacy rights of the individual. See *United States v. Miller*, 116 F3d 641, 663 (2d Cir., 1997). More recently, in *United States v. Concepcion*, 579 F3d 214 (2d Cir., 2009), the Court noted that "while Title III allows for wiretaps in limited circumstances, law enforcement must apply for a court order before conducting such surveillance," (18 USC §2518), and set forth "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to be tried or to be too dangerous." (18 USC 25 18(1)(c).

150.     The court in *Concepcion* went further to note that "the district court must ensure that this standard has been met," so that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 US 143, supra.

151.     Thus, in *United States v. Concepcion, supra* the court stated:

> We have acknowledged that "it would be in some sense more efficient to wiretap whenever a telephone was used to facilitate the commission of a crime. But the statutory requirement…reflects a congressional judgment that the cost of such efficiency in terms of privacy interests is too high." *United States v. Lilla, supra* at 105 n.7. In other words, the question is not whether a wiretap provides a simplest, most efficient means of conducting an investigation; telephonic surveillance may only be used when it is necessary to assist in law enforcement.

> With these concerns in mind, we have emphasized that "generalized and conclusory statements that other investigative procedures would prove unsuccessful" will not satisfy Title III.

152.    While the court recognized that the government is not necessarily required to exhaust all conceivable investigative techniques before resorting to electronic surveillance, the Court found that it had approved wiretaps in complex and sprawling criminal cases involving large conspiracies.

153.    As well, in *Concepcion, supra*, the court noted that the application for the warrant established that the government had "tried and failed" to use an informant to infiltrate the operation.  Here, however, it was clear that at least one informant had completely infiltrated the alleged operation and, furthermore, that others would be affected by the continued utilization of the informant.

154.    As is the case here, Investigator McMahon simply generalized that electronic surveillance was necessary. However, as the court noted in *Concepcion*, those circumstances apply to "all drug cases." (at 219).  Indeed, Investigator McMahon, as in *Concepcion*, completely failed to explain why the specific attempts at surveillance would fail.  In other words, the language in *Concepcion* is particularly availing.  There, the court found:

> These general explanations leave a reviewing court to wonder how many times the government attempted surveillance, at what time, where exactly, and why the Government could not "definitively identify" any of Concepcion's associates. The Paholsky Affidavit seems to suggest that simply because other unknown individuals were involved in Concepcion's activities, a wiretap was necessary.  But we have been clear that part of the reason law enforcement performs physical surveillance is to identify co-conspirators.  But we have been clear that part of the reason law enforcement performs physical surveillance is to identify co-conspirators. <u>Once conspirators had been definitively identified, the Government could have sought an informant or introduced a different undercover agent.</u>

54

155.     It is readily apparent that that is the case here.  The Government had already identified many other individuals, had an informant purchase drugs and had met many individuals and, most remarkably, had allowed the informant to begin to infiltrate the conspiracy.  As the Second Circuit has recently cogently pointed, the government could have attempted to introduce other informants or undercover agents to the conspiracy but inexplicably failed to do so. [3]

156.     This case is the type of case where the court in *Concepcion* suggested that the affidavit was not even minimally adequate to support the initial decisions in order to grant the wiretap applications.  Here, traditional investigative techniques had been successful and there was no reason to apply, at that time, for the eavesdrop orders.  Had the government not furthered its wiretap efforts, it would not have had to forgo its investigation.

157.     A clear reading of the applications indicates that the government chose to continue to apply for the wiretaps not because it was necessary, but because it was easier than beginning a new investigation.  The Court in *United States v. Concepcion* stated:

> But because it was easier than beginning a new investigation; since the wiretap was up and running and providing valuable information, better to let it run its course than to begin a new investigation into a low-level drug trafficker.  District Courts must remain vigilant in ensuring that this kind of reasoning, based more on sufficiency and simplicity than necessity, will not justify a wiretap.  For the government to avoid future suppression orders, it would do well to spell out in more detail its investigative efforts.  <u>A wiretap is not a devise to be turned to as an initial matter, but only where the circumstances demonstrate that it is necessary</u>.

158.     As a consequence, it is requested that this court conduct a hearing

pursuant to *Franks v. Delaware*, 438 US 154 because of what appears to be the deliberate and reckless use of false statements in the applications.  Indeed, many courts have held that the same condemnations apply to the omission of significant factual matters. *United States v. Bonds*, 12 F3d 540 (6th Cir., 1993); *United States v. Carneiro*, 861 F2d 1171 (9th Cir., 1988); *United States v. Ferguson*, 758 F2d 843 (2d Cir., 1985); *United States v. Hadfield*, 918 F2d 987 (1st Cir., 1990); *United States v. Kolkley*, 899 F2d 297 (4th Cir., 1990); *United States v. Reivich*, 793 F2d 957 (8th Cir., 1986).

159.     As was noted in *United States v. Salemme*, 978 F.supp. 343:

> The government's statutory obligation to make "a full and complete statement" concerning the necessity of a powerful but intrusive weapon that electronic surveillance constitutes is unqualified; the government is obligated to inform the court of all of its information on this issue.  (at 348).

160.     Thus, the disclosure obligation concerning necessity is greater than that for probable cause.  In the probable cause context, the applicant need only disclose those facts and circumstances relied upon to sustain his or her belief that probable cause for issuance of the eavesdrop warrant does exist.  (18 USC §2518(1)(b).

161.     In *United States v. Ippolito*, 774 F2d 1482 (9th Cir.) a hearing was necessitated regarding the affirmative misrepresentations and material omissions regarding the productivity of an undercover informant in investigating in organized crime family.  The court recognized that a resolution of the issue must involve such a hearing where both material misrepresentations and material omissions are considered by the Court.

162.     As we have set forth, it is interesting to note that Investigator McMahon only indicated that the agents were already far along the way to gaining additional cooperation.

There was no reason to believe that the informant could not further be utilized and CI-1's usefulness increased.

163.          As a result, your deponent asks that this court conduct a hearing.

164.          Conclusory statements are insufficient to allow agents to utilize interception of communications as a first line of investigation. *United States v. Kalustian*, 529 F2d 589 (9th Cir., 1975).

165.          The necessity requirement is not met when the affidavit relies on conclusory language asserting that no visual surveillance could take place without endangering the investigation. *United States v. Castillo-Garcia*, 117 F3d 1179, 1174 (10th Cir., 1997), overruled on other grounds and *United States v. Remirez-Encarnacion*, 291 F3d 1219 (10th Cir., 2002). (See also *United States v. Carneiro*, 861 F2d 1171, 1180 (9th Cir., 1988) (affidavits asserting difficulty of the investigation, lack of informants, and difficulty of physical surveillance did not satisfy necessity requirements because agents had not attempted to conduct traditional investigation, find informants or conduct physical surveillance until after the wiretap had already begun.))

## XIII

## ATTAINMENT OF GOALS

166.          In addition to the foregoing, it is clear that the goals of the investigation had been achieved <u>prior to</u> the termination of the first application. Title 18 USC §2518 (5) mandates that the authorized period of interception must terminate upon the attainment of the

investigative objective. Here, it could clearly be observed that the objectives of the investigation were attained, at the very least, by the conclusion of the first if not the second eavesdrop order. As a result of the earlier interception orders, agents had already learned most, if not all of the information necessary to attain the goals of the investigation.  Thus, a hearing is requested to determine whether the goals of the interception had already been met because the investigative objective had already been attained.

167.      Several interception applications refer to various pen register and trace and trap devices.  Counsel requests that the government provide the defense with all information pertaining to trace and trap or pen register devices, including the results of any such orders, the orders themselves and any applications requesting such orders.

168.      As a consequence, counsel requests that the following information be provided to the defense so that counsel may supplement its motion to controvert the interception orders and suppress evidence obtained:

  a.    A copy of each and every search warrant issued which are relevant to this case.

  b.    A copy of each and every written search warrant application together with any supporting affidavit.

  c.    A copy of each voice recording, stenographic transcript and/or long hand record with respect to any oral search warrant application.

  d.    A copy of any search warrant inventory return.

  e.    The time and date when the United States Government entered into the investigation of the defendant and/or any co-defendant relative to the instant matter.

  f.    Whether the United States Government, including any police officers, officials or United States prosecutors had

58

any involvement in the instant case.

g.    In addition to the foregoing, provide the following to the defense relative to any pen register and trap and trace device orders and any interception orders, etc.

1)    A copy of all tape recordings which are the subject of all intercepted conversations on each of the interception orders listed above.

2)    Any and all progress reports. (10 day reports)

3)    All minimization directive and/or orders.

4)    Copies of any all warrants, applications and supporting affidavits.

5)    Copies of any transcripts prepared by the government relative to any intercepted conversations whether the government believes it will use such statements or not.

6)    Copies of any and all sealing orders.

7)    The results of any trace and trap or pen register device as listed above.

8)    All logs and surveillance reports.

9)    Where any eavesdrop applications refer to any phone conversation leading to the application of any orders provide a copy of the tape recorded conversations.

169.    Recordings of unlawfully intercepted communications may not be used as evidence in any trial pursuant to 18 U.S.C. §2515.  In the instant case, the defendant did not consent to the monitoring and recording of his conversations nor was there any consent given by any other individual to monitor and record his conversations.

170.    18 U.S.C. §2518(3) provides that an interception order may only be

59

granted where:

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense …;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
>
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> (d) … there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

171.     Furthermore, 18 U.S.C. §2518(5) provides that no interception order "may authorize or approve the interception of any wire, oral, or electronic communication for any period longer than is necessary to achieve the objective of the authorization."

**Achievement of Investigative Goals**

172.     Title 18 USC §2518(5) mandates that the authorized period of interception must terminate upon the attainment of the investigative objective.  In this case, it can clearly be seen that the objectives of the investigation were attained, at the very least at the conclusion of the first application and order.  As a result of the earlier interception orders, agents had already learned most, if not all, of the information necessary to attain the goals of the investigation.  For those reasons counsel requests that the orders be continued, that a hearing be conducted pursuant to *Franks v. Delaware, supra,* that counsel be provided with all surveillance reports and notes, that  hearing be conducted to determine whether the objects of the conspiracy

were attained and whether the calls were properly minimized.[4]

173.        All of the subsequent eavesdrop orders which were issued by the District Court clearly show why counsel's arguments are true. Rather than attempting to further the objectives of the investigation by traditional investigative procedures, the affidavits on behalf of the later eavesdrop orders simply utilized the illegally obtained information from the first order. Virtually all of the Yervelli affidavit is based upon telephone calls which were previously improperly intercepted.

174.        As well, there was no probable cause to believe that the telephone calls should be intercepted.  Nothing indicated that anyone should have been targeted as a violator or that any phone calls should have been intercepted.  Indeed we request a hearing as to why conversations were not minimized.

175.        For those reasons, _all_ of the issued eavesdrop orders should be controverted and any evidence derived therefrom must be suppressed.  Additionally, because the second wiretap Order relied exclusively on the fruits of the first Order the second Order is tainted and inadmissible as the first of the fruit of the poisonous tree.  Thus because no independent probable cause existed and because the Order was tainted the fruits of both Orders must be suppressed.

## XIV

## LACK OF MINIMIZATION AND PROBABLE CAUSE FOR BOTH OF THE EAVESDROP WARRANTS

---

4 As we have stated above, a large portion of the applications were redacted and counsel is unable to make a complete argument as to the issues raised herein as well as the probable cause issues. The government has indicated that counsel will be able to view the unredacted portions at the government's office.

176.         Title III of the Omnibus Crime Control and Safe Avenues Act provides that wiretap interception of communications pursuant to a court order "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." See 18 USC §2518(5).

177.         In *Scott v. United States*, 436 US 128 (1978) the Court articulated a standard for interpreting the minimization requirement that courts continue to apply. In *Scott*, there was a lack of significant minimization of the conversations from the phone of a targeted individual. The court there held that the government must make a good faith effort to comply with the minimization requirements at the very least. The court provided in "AD HOC" case-specific methodology to determine reasonableness. Other factors which courts must take into account are the length of the calls, whether it was a one-time call and whether it was "ambiguous in nature or apparently involved guarded or coded language." Where a call was particularly short, was a one-time call or involved ambiguous or coded language agents would not be expected to know it was a non-pertinent call.

178.         In this case, the government was focused staying on an investigation involving a widespread conspiracy the government alleged, certainly as it related to the first eavesdrop order. As a consequence, this Court cannot justify any more extensive surveillance where agents are trying to determine the precise scope of the enterprise. This case was much more limited in scope.

179.         Previously, the Second Circuit had expressed a two minute rule in *United States v. Bynum*, 485 F2d 490 (2d Cir., 1973) vacated other grounds 417 US 903. However, in *Drimal v. Tai*, 786 F3d 219, 225 (2d Cir., 2015) the court indicated that its decision

in *Bynum, supra* could be read to suggest a presumption that called less than 2 minutes long need not be minimized. The court, however, indicated that "this [was] not a fixed rule for every case: whether the 2-minute presumption applies is a fact-specific determination. (at 226). In circumstances where, as here, agents could determine in seconds that the calls were personal in nature, the two-minute presumption does not automatically shield against the failures to minimize calls.

180.    Deference should not be paid, in this case to law enforcement personnel. *United States v. Hinton*, 543 F2d 1002, 1012 (2d Cir., 1996).

181.    This is not a case involving a large amount of text messages. Rather, the government was more interested in the personal phone calls which, on many occasions, it did not minimize, especially phone calls involving defendant Olivero.

182.    Due to the number of phone calls intercepted and, perhaps, text messages as well, we ask that the Court order the government to provide a full list of all phone calls and which phone calls were minimized and which were not. That way, counsel can focus on the issues of minimization.

183.    While counsel has attempted to spot check the phone calls, we are unable to do it on a wide scale basis. We are simply unable, due to a lack of man power, to be able to segregate the minimized from the non-minimized conversations. The government has an ability to do so and, we request that the government provide such a log to counsel so that we may review all of the non-minimized phone conversations.

184.    In any event, because we believe that many of the phone calls were not minimized, especially the phone calls between the targets of the investigation and defendant Mr.

25

Olivero who was never a target of the investigation nor was she mentioned in the eavesdrop orders, any conversations between Mr. Olivero and any of the other individuals named herein must be suppressed.

## XV

## FAILURE TO TIMELY SEAL

185.        Counsel has not been provided with copies of the sealing orders. We request that they be turned over to counsel In *United States v. Ojeda-Rios*, 495 US 257 the Supreme Court rejected a government argument that  sealing delay is acceptable where the prosecution explains why the delay occurred and then demonstrates that the tapes are authentic. The court expressly held that a "satisfactory explanation clause" set forth in 18 USC §2518(8)(a) require that the government explain not only why a delay occurred but also why it is excusable.  Thus, the government is required to establish that the reason for the sealing delay was objectively reasonable at the time that the delay occurred.  The government's explanation for any such sealing delay should be fully presented at a suppression hearing.

186.        We reserve our right to show that the sealing delays in this case were inexcusable and not explained. Accordingly, this motion should be granted.

187.        Consequently, the defense is entitled to a full disclosure of any and all evidentiary materials derived from the illegal electronic surveillance. *Alderman v. United States,* 394 US 165; 18 USC §2518(10)(a).  A hearing must, therefore, be conducted.  *Nardone v. United States*, 308 US 338.

## XVI

## MOTION FOR LEAVE TO JOIN IN CO-DEFENDANTS' MOTIONS

188.    This motion to adopt any motions filed by Mr. Olivero's co-defendants and is made in the interest of judicial efficiency.  Permitting Mr. Olivero to join in his co-defendant's motions that apply to her either factually or legally will avoid duplicative filings by defense counsel.  Mr. Olivero asks that she be deemed to join in any motion filed by a co-defendant unless she gives notice to all parties and the Court that she will not join the motion.

189.    Wherefore, Mr. Olivero respectfully requests that the Court enter an order allowing him to adopt the motions filed by his co-defendants in this action.

## XVII

### MOTION TO *VOIR DIRE* GOVERNMENT EXPERTS OUTSIDE THE PRESENCE OF THE JURY

190.    Mr. Olivero moves the Court to issue an order allowing him to *voir dire* any proposed government experts at trial outside the presence of the jury.

191.    Rule 104 of the Federal Rules of Evidence states that preliminary questions regarding the competency of a person called as a witness "shall be determined by the Court."

192.    A defendant is entitled to challenge the competence of the government's proposed experts and the admissibility of his/her testimony.  *See, In re Chicago Flood Litig.*, No. 93 C 1214, 1995 U.S. Dist. LEXIS 10305, at *27 (N.D. Ill. July 19, 1995) (when question raised regarding basis for proffered expert testimony, court permitted voir dire outside the jury's presence).

193.    A *voir dire* examination outside the presence of the jurors is the preferred method for determining the competency of an offered expert witness.  *See, e.g., United States v. 68.94 Acres of Land*, 918 F.2d 389, 391 (3d Cir. 1990); *see also, e.g., United States v. Snow*, 552

65

F.2d 165, 168 (6th Cir. 1977) (defense counsel examined government expert outside of presence of jury regarding qualifications); *United States v. Henson*, 486 F.2d 1292, 1303 (D.C. Cir. 1973) (en banc) (voir dire of government expert outside the presence of the jury).

194.        In the present case, complete discovery has not been received from the government, including the names of and summaries by the government's proposed experts, if any, pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Therefore, this motion is made so that if the government subsequently identifies any experts (such as to identify questioned substances), defense counsel may *voir dire* the expert outside of the presence of the jury.

195.        Therefore, Mr. Olivero requests that he be permitted to *voir dire* any government expert or experts outside the presence of the jury, as to both competency and admissibility.

## XVIII

## MOTION FOR AUDIBILITY HEARING

196.  Mr. Olivero moves the Court to hold an audibility hearing to determine whether any recordings that the government seeks to introduce at his trial are audible. The government has not formally identified what recordings it will seek to introduce at trial. Once it does so, an audibility hearing should be held.

197.    As the Court is aware, if portions of any recording are unintelligible, and the

unintelligible portions are so substantial as to render the recording as a whole untrustworthy, the recording must be suppressed. *See United States v. Arango-Correa*, 851 F. 2d 54, 58 (2d Cir. 1988); United *States v. Aisenberg*, 120 F. Supp.2d 1345 (M.D. Fla. 2000). Therefore, in advance of trial, the Court should conduct a hearing to determine the audibility of the recordings the government plans to introduce at trial.

## XIX

## MOTION FOR LEAVE TO MAKE OTHER MOTIONS

198.    Mr. Olivero respectfully moves the Court for an order allowing him to make further and additional motions which may be necessitated by due process of law, by the Court's ruling on the relief sought herein, by additional discovery provided by the government or investigation made by the defense, and/or by any information provided by the government in response to the defendant's demands.

199.    The specific requests contained in these motions are not meant to limit or preclude future requests by the defendant for further relief from this Court as appropriate. The reason additional motions should be allowed is that filing these motions at this time would not be an efficient use of the Court's and the parties' time and resources, as many of these motions may not be necessary based on what evidence the government does or does not intend to introduce at trial, or by other pre-trial developments in this case. Additionally, other motions may be required depending on the Court's rulings on the motions made *supra* and other information or documents disclosed by the government.

200.    Specifically, Mr. Olivero reserves the right to make the following motions at an appropriate time in the case, in addition to other motions that may be appropriate: 1) motions *in*

*limine* related to evidence the government, Mr. Olivero or co-defendants intend(s) to introduce at trial; 2) *ex parte* motion pursuant to Federal Rule of Criminal Procedure 17(b)/(c) for an order allowing the pretrial production of documents; 3) motion pursuant to Federal Rule of Criminal Procedure 15(a) for pre-trial deposition of a witness; 4) motion for pre-trial production of government summaries pursuant to Federal Rule of Evidence 1006; 5) motion for a supplemental jury questionnaire or for counsel participation in *voir dire*; 6) motion for additional peremptory challenges; 7) Federal Rule of Criminal Procedure Rule 29 motions at trial; and, 8) motion for various non-pattern jury instructions.  Additionally, Mr. Olivero reserves his right to move to dismiss the indictment because it alleges two distinct conspiracies.

201.    For the foregoing reasons, the Court should issue an Order permitting Mr. Olivero to make other motions as requested above.

202.    As well, defendant Olivero respectfully joins in the motions filed by his co-defendants to the extent that the motions are directly related to Mr. Olivero's case.

WHEREFORE, counsel moves for the relief sought herein.

DATED: March 4, 2024
          Buffalo, New York

Respectfully submitted,

/s/Herbert L. Greenman

HERBERT L. GREENMAN
LIPSTIZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 300
Buffalo, NY 14202
Phone (716) 849-1333
Fax (716) 855-1580

68

hgreenman@lglaw.com

Sworn to before me this 4th day
of March, 2024

/s/Elizabeth M. Daigler
_____
 Notary Public, State of New York
Qualified in Erie County
My Commission Expires October 31, 2026